**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| ROCHELLE HOLDINGS XIII, LLC, | Case No. 6:21-bk-03216-LVV |
| Debtor. | |
| _____/ | |

**HMG VENTURE PARTNER, LLC, PM S-1 REO, LLC AND PROJECT ORLANDO, LLC'S OBJECTION TO CONFIRMATION OF THE DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION**

Parties in interest, HMG Venture Partner, LLC ("HMG"), PM S-1 REO, LLC ("PMS") (collectively referred to as, "HMG/PMS"), and Project Orlando, LLC ("Project Orlando"), by and through their undersigned counsel, hereby object to confirmation of the Debtor's Third Amended Plan of Reorganization (Doc No. 99), pursuant to 11 U.S.C. § 1129(a). In support thereof, HMG/PMS and Project Orlando, LLC state as follows:

**BACKGROUND FACTS**

1. James Palmer ("Palmer"), the holder of 99.9% of the membership interests of the Debtor, and HMG/PMS have been involved in protracted foreclosure and related collection litigation since 2010.

2. On October 21, 2019, a portion of this litigation culminated with an affiliate of PMS obtaining a Deficiency Judgment against Palmer from the Circuit Court of the Ninth Judicial Circuit for Orange County, Florida ("Ninth Circuit") in case styled *PSP/MRC Debt Portfolio S-1, L.P v. Protection Orlando, LLC,* et al., Case No 2013-CA-005076. The Deficiency Judgment was entered in the amount of $54,279,641.88. Palmer appealed the Deficiency Judgment to the Fifth District Court of Appeals which per curiam affirmed the Ninth Circuit's decision. Following its

entry, the Deficiency Judgment was assigned to PMS. To date, Palmer has failed and refused to make any payments towards the Deficiency Judgment.

3. Not only has Palmer failed to pay the amounts due and owing to PMS, he sought to fraudulently conceal his assets from PMS and other creditors by transferring his ownership interest in various corporate entities, including his 99.9% ownership interest in the Debtor, to his wife and himself jointly. This was done to shield his membership interest in these companies from collection under Florida's tenancy by the entirety law.

4. After these fraudulent transfers were discovered, MMA Realty Capital, LLC ("MMA") filed a complaint seeking to avoid these fraudulent transfers in the Ninth Circuit in the case styled *MMA Realty Capital, LLC v. Palmer*, Supp. Proc. No. 2017-CA-7216. On February 21, 2018, this litigation culminated with the entry of the Order Granting Motion for Summary Judgment and Related Relief in Proceeding Supplementary Concerning Select Assets ("Fraudulent Transfer Judgment"). The judgment found that Palmer had fraudulently transferred his ownership interest in the Debtor and other corporate entities from personal to joint ownership with his wife with the actual intent to hinder, delay and defraud creditors. Because of this finding, the Fraudulent Transfer Judgment (i) entered judgment in favor of MMA in the amount of $2,720,874.55, (ii) avoid the fraudulent transfers, (iii) re-vested ownership of the entities in Palmer individually, and (iv) entered a charging order against Palmer's membership interest in each entity, including against Palmer's 99.9% interest in the Debtor.

5. Accordingly, upon entry of the Fraudulent Transfer Judgment and associated charging orders, MMA held a first priority lien against Palmers 99.9% membership interest in the Debtor. MMA has since assigned its claim and the associated judgments and orders, including the Fraudulent Transfer Judgment, to HMG.

6. Due to Palmer's failure to pay the Deficiency Judgment, on May 15, 2020, PMS also obtained a charging order against Palmer's 99.9% membership interest in the Debtor pursuant to the Order Granting Plaintiff's Motion for Charging Order Against Palmer Entities and Appointment of Receiver to Enforce Charging Orders ("Charging Order"). The Charging Order also appointed Larry S. Hyman as the receiver with the right to enforce the Charging Order and collect any distributions from the Debtor to be made to Palmer. Mr. Oscher was to hold these distributions until further order of the court.

7. Given the foregoing, HMG/PMS collectively hold liens and the right to distribution on account of Palmer's 99.9% membership interest in the Debtor in an amount greater than $60 million. Because of this, Palmer has no economic interest in the Debtor or this bankruptcy case.

### HMG/PMS AND PROJECT ORLANDO HAVE STANDING TO OBJECT TO CONFIRMATION AS PARTIES IN INTEREST

8. As previously stated herein, HMG/PMS collectively hold liens against and the right to distribution on account of Palmer's 99.9% membership interest in the Debtor.

9. Project Orlando is the developer under the Kelly Park Crossing Development of Regional Impact ("DRI"). The Debtor's real property is located within and subject to the terms of the DRI. Under the terms of the DRI, Project Orlando is the party who is authorized to file and seek city approval of any and all developments or projects within the DRI. Accordingly, Project Orlando is required to participate in and comment on any proposed development or projects on the Debtor's real property. To date, the Debtor has not contacted Project Orlando related to the development of any portion of its property.

10. Section 1109 of the Bankruptcy Code provides that a "party in interest" has the right to appear and be heard on any issue in a case under Chapter 11. *See*, 11 U.S.C. § 1109(b). While the statutory "parties in interest" are listed in Section 1109, this list has been

deemed to be non-exhaustive. *See*, *In re Ionosphere Clubs, Inc.* 101 B.R. 844, 849 (Bankr. S.D. N.Y. 1989).

11. Bankruptcy Courts sitting in Florida "[follow] the general understanding that anyone with a "pecuniary interest, practical stake, or legally protected interest that could be affected by the bankruptcy proceeding" is entitled to "party in interest" status. *See*, *In re Surfside Resort and Suites, Inc.* 344 B.R. 179 (Bankr. M.D. Fla. 2006).

12. HMG/PMS clearly possess a pecuniary interest in the outcome of this case in that they will receive 99.9% of any distribution to equity under the terms of the Plan. Project Orlando possess both a practical and a legal interest to be protected in this case in that Project Orlando is the developer under the DRI and any development of the Debtor's real property directly impacts Project Orlando's right and obligations as the developer. As a result, HMG/PMS and Project Orlando possess the requisite standing as parties in interest to object to confirmation of the Debtor's plan under 11 U.S.C. § 1128(b).

## OBJECTION TO DEBTOR'S THIRD AMENDED PLAN

13. Section 1129 of the Bankruptcy Code provides that a court shall confirm a Chapter 11 plan if it complies with each of the requirements set forth therein. "The Debtor has the burden of proving by a preponderance of the evidence each of the elements of § 1129." *In re Monticello Realty Investments, LLC*, 526 B.R. 902, 912 (Bankr. M.D. Fla. 2015).

14. The Third Amended Plan ("Plan") contains numerous defects and fails to comply with the requirements of Section 1129(a). As such, the Third Amended Plan cannot be confirmed.

A. "<u>The Plan Violates the Good-Faith Requirement of § 1129(a)(3)</u>

15. "The court shall confirm a plan only if . . . [t]he Plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). "The focus of the court's inquiry is the plan itself, and courts must look to the totality of the circumstances surrounding the

plan." *In re Piper Aircraft Corp.*, 244 F.3d 128, 1300 (11th Cir. 2001). Furthermore, "good faith is a complex determination based upon consideration of all the facts in assessing the debtor's intent, the realistic possibility of effective reorganization and the exercise of judicial discretion.'" *Epic Metals Corp. v. Condec, Inc.*, 232 B.R. 806, 807 (M.D. Fla. 1999).

16. As set forth above, HMG/PMS have been involved in protracted litigation that culminated in the entry of final money judgments and charging orders against Palmer's 99.9% membership interest in the Debtor in an amount greater than $60 million. Furthermore, due to the nature of Palmer's fraudulent activity in seeking to avoid paying these judgments, the Ninth Circuit appointed a receiver over Palmer's membership interest in the Debtor thereby entitling the receiver to collect any distribution to be paid to Palmer.

17. Given the size of HMG/PMS's claims and the over $30 million owed to secured creditors, the Debtor would be required to sell the 202 acres at issue for over $95 million for Palmer to ever receive a distribution on account of his membership interest. The Debtor estimates the property is worth $55 million on its best day. Given these numbers, Palmer has no economic interest in the Debtor thereby making it difficult to understand the reasoning behind Palmer's decision to file the case unless it was done to pay all or a portion of HMG/PMS's claims. Based on a review of the Third Amended Plan and Palmer's past conduct, that is not the purpose of the Third Amended Plan.

18. Rather, it is clear from the Third Amended Plan that the Debtor is attempting to circumvent its obligation to pay the amounts due and owing to HMG/PMS under the terms of the charging orders by proposing to sell the entire 202 acres of property and retain all proceeds to "purchase a new property to continue the operation of the business." (See, Doc. No. 99., p. 14). The Debtor's sole purpose is to act as a holding entity for the 202 acres that it is now proposing to sell. Upon the sale of the real property, it will have no business purpose or continued operations.

Furthermore, any attempt by the Debtor to retain any excess proceeds from the sale of the property is a clear violation of the express terms of the Debtor's Operating Agreement and Florida Law.

19. Specifically, Section 9.1.2 of the Operating Agreement provides that the "[s]ale, transfer, or other disposition of all or substantially all of the property of the [Debtor]" constitutes an event of dissolution. The Debtor is a single asset real estate debtor and the sale of the 202 acres at auction or otherwise is a sale of all of the Debtor's property. Thus, the dissolution provisions in the Operating Agreement will be triggered by the sale or other disposition of the property contemplated by the Third Amended Plan.

20. Upon an event of dissolution, Section 9.2 of the Operating Agreement provides that after payment of the Debtor's obligations (i.e. payment to the two secured creditors), distributions shall be made to the Debtor's members. As HMG/PMS have a Charging Order against Palmer's 99.9% membership interest in the Debtor, any such distributions upon dissolution must be made to HMG/PMS in accordance with the terms of the Charging Orders and Fla. Stat. § 605.0503. Section 605.0503 obligates the Debtor, not Palmer, to "pay over to the judgment creditor a distribution that would otherwise be paid to the judgment debtor". Fla. Stat. § 605.0503(1).

21. Given the plain terms of the Plan and Palmer's history of fraudulently concealing assets and refusing to pay his creditors, it is clear the Debtor proposed the Plan for the sole purposes of quickly satisfying the secured debt while simultaneously avoiding its statutory obligation to make a distribution to HMG/PMS. Such a plan is clearly proposed in bad faith in violation of Section 1129(a)(3).

B. **The Plan Does Not Comply with the provisions of § 1129(a)(1) as it Fails to Properly Classify all Claims and Interests**

22. Section 1123(a) of the Bankruptcy Code requires that a debtor designate classes of claims and interests to be treated under a Chapter 11 plan and to designate where each class is

impaired or unimpaired for purposes of voting and confirmation of the Plan under Section 1129(a). While the Bankruptcy Code does not define "interests", it is clear that HMG/PMS has a direct financial and legally protected interest in the Debtor by virtue of the Charging Orders and the plain language of Fla. Stat. § 605.0503(1).

23. As indicated above, pursuant to Fla. Stat. § 605.0503(1), "a charging order constitutes a lien upon a judgment debtor's transferable interest and requires the *limited liability company* to pay over to the judgment creditor a distribution that would otherwise be paid to the judgment debtor." Accordingly, upon the entry of the Charging Orders, the Debtor is statutorily required to make any payment that would otherwise be due to Palmer directly to HMG/PMS. The Debtor's failure to make such a payment to HMG/PMS would be a violation of Fla. Stat. § 605.0503(1) and subject it to personal liability.

24. Because the Debtor's Plan is essentially a Plan of liquidation and the Operating Agreement requires the Debtor to distribute any and all excess proceeds from a sale of the property to Palmer, HMG/PMS have an interest in the Debtor that must be classified and treated in accordance with Section 1123(a). The Debtor's failure to provide for HMG/PMS is a clear violation of Section 1123(a)(1) and thus, the plan fails to comply with the requirements of Section 1129(a)(1).

C. **The Amended Plan Violates Feasibility Requirement of § 1129(a)(11)**

25. The Amended Plan is not feasible in its current form. Section 3.01 and 3.02 of the Third Amended Plan provides for both secured claims to be paid in full by April 4, 2022. To accomplish this, the Debtor proposes to fund the Third Amended Plan by selling the entire parcel of property. As previously mentioned herein, while the Debtors claims to have received contracts from two interested buyers, the auctioneer has yet to obtain commitments from a stalking horse

bidder and the Plan and associated Disclosure Statement fail to include any information related to any buyers ability or willingness to purchase the property

26. Notably, the Debtor has failed attach copies of either of the contracts it references in its Plan and Disclosure Statement making it impossible for the interested parties to decipher who the bidder is, whether a contract has in fact been made, and most importantly, if the entity who seeks to become the stalking horse bidder is capable of performing under the alleged contract. At this time, the Debtor has nothing more than an empty promise from a potential buyer that it will "bid more than enough to pay the two mortgages." (See, Doc. No. 99, p. 14). Accordingly, the plan is not feasible and violates section 1129(a)(11).

**D.     The Amended Plan is Not Fair and Equitable**

27. Section 1129(b) permits the court to confirm a chapter 11 plan despite the fact that a class of claims or interests is impaired, so long as the plan does not unfairly discriminate and is fair and equitable with respect to the impaired class. *See,* 11 U.S.C. § 1129(b)(1).

28. With respect to impaired interests, such as that of HMG/PMS, a plan may be deemed to be "fair and equitable" if it provides that the interest holders will receive *inter alia,* the value of such interest **or** that the holders of any interest junior to the interests of the impaired class will not receive or retain any property on account of such junior interest. *See,* 11 U.S.C. § 1129(b)(2)(C)(i)-(ii).

29. The Third Amended Plan fails to provide for any treatment of HMG/PMS, let alone that HMG/PMS will receive the value of its interest in the event any proceeds are available for distribution after the sale of the property. Despite this fact, the Debtor's Third Amended Plan provides that Palmer, whose interests are junior to that of HMG/PMS, will retain his equity interest in the Debtor.

30. The Debtor's Third Amended Plan clearly violates 11 U.S.C. § 1129(b)(2)(C)(i)-(ii) as it makes no provision for HMG/PMS to receive or retain the value of any of the distributions to which it is rightfully entitled, while at the same time permitting Palmer to retain his equity. As such, the Plan fails to meet the requirements of Section 1129(b) and cannot be confirmed.

## RESERVATION OF RIGHTS

HMG/PMS and Project Orlando reserve the right to raise additional objections and concerns at confirmation, as well as raise further objections as the pleadings are amended and/or responses are filed by the Debtor or any other party.

WHEREFORE, HMG Venture Partner, LLC, PM S-1 REO, LLC, and Project Orlando, LLC respectfully request that the Court enter an Order: (i) sustaining this Objection; (ii) denying confirmation of the Third Amended Plan; and (iv) granting such other and further relief as this Court deems just and proper.

Dated: December 15, 2021.

/s/ Patrick M. Mosley
Patrick M. Mosley
Florida Bar No. 0033735
Jessica A. Clemente
Florida Bar No. 1003462
HILL WARD HENDERSON
101 East Kennedy Boulevard, Suite 3700
Tampa, FL 33602
Telephone: (813) 221-3900
Facsimile: (813) 221-2900
E-Mail: patrick.mosley@hwhlaw.com
E-Mail: jessica.clemente@hwhlaw.com
E-Mail: tricia.elam@hwhlaw.com
*Counsel for HMG Venture Partner, LLC, PM S-1 REO, LLC and Project Orlando, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 15th day of December, 2021, a true and correct copy of the foregoing Objection to Confirmation of the Third Amended Plan of Reorganization has been sent to all parties receiving electronic mail via CM/ECF and/or by U.S. Mail to the following:

Rochelle Holdings XIII, LLC
260 Wekiva Springs Road, Ste. 2030
Longwood, FL 32779

Lawrence M Kosto
Kosto & Rotella, P.A.
619 East Washington Street
Orlando, FL 32801

Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

Miriam G Suarez
Office of the United States Trustee
George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

                                                          */s/ Patrick M. Mosley*
                                                          Patrick M. Mosley

16286719v1