ORDERED.

Dated: January 10, 2022

_____
Lori V. Vaughan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:21-bk-03216-LVV

In re:

ROCHELLE HOLDINGS XIII, LLC,

    Debtor.
_____/

**ORDER APPROVING DEBTOR ROCHELLE HOLDINGS XIII, LLC'S AMENDED MOTION FOR BID AND SALE PROCEDURES, MARKETING PROCEDURES, AND FOR RELATED RELIEF**

THIS CAUSE having come on to be heard on January 4, 2022, on Debtor's Rochelle Holdings XIII LLC's Amended Motion for Bid and Sale Procedures, Marketing Procedures and for Related Relief (the "Motion") (Doc. # 113) seeking entry of an order, pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving

bidding procedures and bidder protections for the sale of the Real Property[1]; (ii) approving marketing procedures; (iii) authorizing the debtor to enter into a Stalking Horse Contract and to offer certain Stalking Horse Bid protections; and (iv) scheduling a final hearing to approve the sale of the Real Property to the Successful Bidder at the Auction.  The Court having reviewed the Motion and the record in this case, having heard argument of counsel present at the hearing, and being otherwise fully advised in the premises thereof, the Court finds that the competitive Bid and Sale Procedures attached hereto as **Exhibit "A"** (the "Bid Procedures") in connection with the proposed sale of the Real Property (as defined therein) are in the best interests of the Debtor, the Debtor's estate, its creditors, equity holders, and other parties in interest. Accordingly,

THE COURT FINDS AS FOLLOWS:

1. The Court finds that the Court has jurisdiction over this matter and over the property of the bankruptcy estate pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

3. The statutory predicates for the relief sought are 11 U.S.C. §§ 105, 363, and 365, and Fed. R. Bankr. P. 2002, 6004, and 9014.

4. The best interests of the estate will be served by this Court granting the Motion, including approval of: (i) the Bid Procedures; (ii) the Marketing Plan, which is attached hereto as **Exhibit "B"**; (iii) the form of the Notice of Auction and Sale Hearing, as amended, which is attached hereto as **Exhibit "C."**

5. The Bid Procedures, as amended, are reasonably designed to maximize the value to be achieved for the Real Property.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning given to such terms in the Motion and the Bid and Sale Procedures attached to this Order as Exhibit "A."

6. Good and sufficient notice of the relief sought in the Motion and Hearing has been given under the circumstances, and no further notice is required.

7. The proposed form of Notice of Auction and Sale Hearing ("Auction Notice"), as amended, attached as **Exhibit "C",** is appropriate and sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing, and the Bid Procedures, and no other or further notice shall be required.

8. The issuance of this Order, including approval of the Bid Procedures as amended, is supported by compelling business justifications.

9. A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

Accordingly, it is

ORDERED:

1. The Motion is GRANTED as set forth herein.

2. Except as otherwise provided in this Bid Procedures Order, all objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3. The Bid Procedures attached hereto as Exhibit "A" are hereby incorporated herein and approved in their entirety. The Debtor is authorized to take any and all actions necessary or appropriate to implement and comply with the Bid Procedures.

4. As further described in the Bid Procedures, the deadline for submitting Stalking Horse Bids for the proposed purchase of the Real Property (the "Stalking Horse Bid Deadline") is **February 11, 2021 at 5:00 p.m.** (prevailing Eastern Time). Stalking Horse Bids shall be submitted to the Auctioneer, Robert Ewald and Ewald Auctions, Inc., 12472 Lake Underhill Rd.,

Suite 312, Orlando, FL 32828, bob@ewaldauctions.com. No Bid shall be deemed to be a Qualified Bid or otherwise considered for any purposes unless such Bid meets the requirements of a Qualified Bid as set forth in the Bid Procedures.

5. The Debtor is authorized to select a Stalking Horse Bidder and to enter into a Stalking Horse Contract no later than February 15, 2022, without further hearing, and upon the Debtor selecting the Stalking Horse Bidder and entry into the Stalking Horse Contract, the Debtor shall file a Notice of Selection, advising the Court and all parties in interest of the name of the Stalking Horse Bidder and any material terms of the initial offer to start the bidding, and the Break up fee, if any. The Debtor is authorized to provide a Stalking Horse Bidder the Break-Up Fee as set forth in the Bid and Sale Procedures.

6. The Auction shall take place on **March 22, 2022 at 11:00 a.m. Eastern Time** and shall end when no other bids are received within 5 minutes from the last bid. Only Qualified Bidders shall be entitled to participate in the Auction. The Auction shall be conducted in accordance with the Bid Procedures.

7. The Court shall conduct a hearing on the proposed sale of the Real Estate to the Successful Bidder at the Auction on **March 28, 2022, at 1:00 p.m.** (prevailing Eastern Time) (the "Sale Hearing") in Courtroom 6C, 6th Floor, George C. Young Courthouse, 400 W. Washington Street, Orlando, Florida 32801.

8. If the winning and back-up bidders fail to close, the Debtor shall sign and deliver a Deed to the Real Property to the Rissers free and clear of all liens and encumbrances within three business days, in exchange for a credit bid by the Rissers in an amount to be determined by the Rissers.

9. No later than twenty (20) days before the Auction, the Debtor will cause the

Auction Notice to be sent by first-class mail postage prepaid to the following: (a) all creditors or their counsel known to the Debtor to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Real Property; (b) the Office of the United States Trustee; (c) all applicable federal, state and local taxing and regulatory authorities of the Debtor or recording offices or any other governmental authorities that, as a result of the sale of the Real Estate, may have claims, contingent or otherwise, in connection with the Debtor's ownership of the Real Estate or have any known interest in the relief requested by the Motion; (d) the United States Attorney's office for the Middle District of Florida; (e) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 as of the date of entry of this Bid Procedures Order; (f) all parties to any litigation involving the Debtor; (g) all counterparties to any executory contract or unexpired lease of the Debtor; (h) all other known creditors and interest holders of the Debtor; and (i) all potential bidders, previously identified or otherwise known to the Debtor.

      10.    Objections, if any, to the relief requested in the Motion in respect of the sale of the Real Estate, the determination of which Qualified Bid is the Successful Bid or any other aspect of the Auction must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the clerk of the Bankruptcy Court for the Middle District of Florida, Orlando Division, 400 West Washington Street, Suite 5100, Orlando, FL 32801 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern time) seven (7) days before the Sale Hearing (the "Sale Objection Deadline"), and (iv) served upon (a) counsel to the Debtor, and (b) the office of the United States Trustee, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, Florida 32801, Tel: (407) 648-6301, attn. Brian Buenaventura (bryan.buenaventura@usdoj.gov), in each case, so as to be actually received no later than 4:00 p.m.

(prevailing Orlando, Florida time) on the same day.

11. The failure of any person or entity to file an objection before the Sale Objection Deadline shall be deemed a consent to the sale of the Real Property to the Successful Bidder or Back-Up Bidder, as applicable, and the other relief requested in the Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Auction, and the sale of the Real Property.

12. The stay provided for in Bankruptcy Rule 6004(h) is hereby waived and this Bid Procedures Order shall be effective immediately upon its entry.

13. All time periods set forth in this Bid Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

14. The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Bid Procedures Order in accordance with the Motion.

15. The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bid Procedures Order.

Attorney Lawrence M. Kosto is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and to file proof of service within three days of entry of this Order.

## Bid and Sale Procedures

Set forth below are the competitive bidding and sale procedures (the "**Bid Procedures**") to be employed by Rochelle Holdings, XIII, LLC (the "**Debtor**") in connection with a sale by auction, free and clear of liens, claims, encumbrances and interests, of the Debtor's interests in the undeveloped 202.5 acres of real property located at 4105 Golden Gem Road, Apopka, Florida 328712 (the "**Real Property**"). By Order dated January__ 2022 (Doc. No. ___) (the "**Bid Procedures Order**"), these Bid Procedures have been approved by the United States Bankruptcy Court for the Middle District of Florida, Orlando Division (the "**Bankruptcy Court**"), in the Debtor's pending Chapter 11 proceeding, Case No. 6:21-bk-3216-LVV.

1. **The Initial Marketing Period**. Ewald Auctions, Inc. (as the "**Auctioneer**") will market the Real Property for an initial marketing period through February 11, 2022, during which time the Auctioneer will solicit stalking horse bids in the form of an executed Purchase and Sale Agreement (a "**PSA**"). The initial marketing period shall commence upon the Bankruptcy Court's approval of Debtor's Application to Employ the Auctioneer. The Debtor has drafted a form of PSA to be used for such purpose, and the Auctioneer will provide a copy of the PSA to all parties who express interest in submitting a Stalking Horse Bid, and will also make such form of PSA available in the electronic data room established pursuant hereto.

2. **The Stalking Horse Bid**. All bids submitted during the initial marketing period shall be considered "**Stalking Horse Bids**." All Stalking Horse Bids must be submitted using the PSA and must satisfy all other Bidder Qualifications set forth in Paragraph 4 herein. Non-conforming bids will not be considered. Any variations from the PSA must be shown on a redline version. The effectiveness of any Stalking Horse Bid shall be contingent only upon the bidder becoming the Successful Bidder or the Back-Up Bidder for the Real Property pursuant to these Bid Procedures, and the entry of the Sale Order (as defined below) by the Bankruptcy Court.

At the end of the initial marketing period, the Debtor shall either (i) designate a bidder to become the "**Stalking Horse Bidder**" and enter into a Stalking Horse Agreement (as defined below) no later than February 15, 2022; or (ii) proceed to the Auction without a Stalking Horse Agreement. The Debtor shall designate as the Stalking Horse Bidder the bidder who (a) submits the highest Stalking Horse Bid above $32,500,000.00, and (b) meets and complies with all Bidder Qualifications set forth in paragraph 4. After Debtor's selection of a Stalking Horse Bidder (or not), the Auctioneer shall continue marketing for the Auction to solicit additional Qualified Bidders to participate in the Auction.

The Debtor is authorized to provide any Stalking Horse Bidder with a break-up fee in the amount of 1.1% of the Stalking Horse Bid amount ("**Break Up Fee**"). The proposed sale to the Stalking Horse Bidder shall be subject to higher or otherwise better offers, if any. A PSA executed by the Debtor and a Stalking Horse Bidder shall constitute a "**Stalking Horse Agreement**." A Stalking Horse Bidder shall be entitled to the Break-Up Fee in the event the Bankruptcy Court enters the Sale Order and the Stalking Horse Bidder either (i) is not the Successful Bidder, or (ii) is the Back-Up Bidder, and the Successful Bidder closes on the sale of the Real Property.

EXHIBIT A

61490685;2

3. **Sale of Real Property "As Is"**. The Real Property is being sold in its "as is," "where is" and "what is" condition and with all faults, with no guarantees or warranties, express of implied, but shall be free and clear of all liens, claims, encumbrances and other interests pursuant to 11 U.S.C. § 363(f).

4. **Bidder Qualifications**. In order for a Stalking Horse Bid to be considered by the Debtor, each Stalking Horse Bidder must submit a signed PSA and comply with the following requirements (the "**Bidder Qualifications**") no later than **5:00 p.m. prevailing Orlando, Florida time on February 11, 2022** ("**Stalking Horse Bid Deadline**"). In the event of an Auction, and if a bidder has not already submitted a conforming Stalking Horse Bid, then to be considered for designation as a Qualified Bidder (as defined below), every bidder must comply with the following Bidder Qualifications no later than **5:00 p.m. prevailing Orlando, Florida time on March 18, 2022** (the "**Auction Qualification Deadline**"). The Bidder Qualifications are as follows:

- **Register with the Auctioneer.** Every potential bidder other than RICHARD J. RISSER, Trustee of the RICHARD J. RISSER FAMILY TRUST dated September 13, 2007, and SHIRLEY R. RISSER, Trustee of the SHIRLEY R. RISSER FAMILY TRUST dated September 13, 2007 (together, the "**Rissers**") must register with the Auctioneer. Bidders may contact the Auctioneer by email at bob@ewaldauctions.com to request the registration form, which form will also be made available in the data room maintained by the Auctioneer.

- **Good Faith Deposit**: Every bidder other than the Rissers must provide a deposit (the "**Bidder Deposit**") in an amount of One Million Dollars ($1,000,000.00) which shall be delivered to the Escrow Agent (as defined below), via a wire transfer no later than 5:00 p.m. (Eastern Standard Time) by the Staking Horse Bid Deadline or the Auction Qualification Deadline, as applicable. All Bidder Deposits shall be held in trust by the Escrow Agent for deposits made in connection with the Auction. The Successful Bidder and the Back-Up Bidder, respectively, will be required to supplement their Bidder Deposits to equal ten percent (10%) of the Total Purchase Price of their respective contracts, as provided in paragraph 9(b) herein below.

- **Corporate Authority**: Each bidder other than the Rissers must provide written evidence acceptable to the Debtor in its sole discretion demonstrating the appropriate corporate authorization of the proposed bidder to consummate the purchase of the Real Property.

- **Identification of Bidder and Bidder's Good Faith**: Each bidder other than the Rissers must provide an affidavit under penalty of perjury from a corporate officer of the proposed bidder identifying (i) the corporate structure of the proposed bidder, (ii) the identity of the officers, directors, managers, members and equity holders of the proposed bidder, (iii) disclosing any relationship between any of such parties and the Debtor or any or the Debtor's direct or indirect owners, and (iv) disclosing any relationship between any of such parties and any other interested bidder and its principals. If so requested, the Debtor agrees to keep such information confidential unless such bidder becomes a Successful Bidder or a Back Up Bidder.

2

- **Proof of Funds**: Each bidder other than the Rissers must provide written evidence that, in the discretion of the Debtor and the Auctioneer, establishes that the bidder has the financial ability to consummate the purchase of the Real Property within twenty-one (21) days after entry of the Sale Order (as defined below), should such bidder submit the highest bid (such information, "**Proof of Funds**"). A bidder's proof of financial ability to consummate the transaction shall include evidence related to the initial purchase price as well as any increased purchase price that such bidder submits in connection with the Auction. If so requested, the Debtor agrees to keep such information confidential, provided, however, that in the event of a dispute related to such financial wherewithal, the Debtor reserves the right to disclose such financial wherewithal to the Bankruptcy Court in connection with any such dispute.

- **No Conditions or Contingencies**: The PSA and every bid shall be without any financing contingencies, due diligence contingencies or conditions, shall not be subject to any internal corporate or other approvals, and shall not be subject to any other conditions or contingencies to the consummation of the transaction for the purchase of the Real Property, other than being selected as the Successful Bidder (or Back-Up Bidder) (each as defined below) and the entry of the Sale Order.

- **Irrevocable**: A bid (including a Stalking Horse Bid) must be irrevocable through the completion of the Auction, provided that if such bid is accepted as the Successful Bid or, if applicable, a Back-Up Bid (as defined below), at the Auction, then each such bid shall remain irrevocable as set forth below.

5. **Total Purchase Price of Successful Bid to Include Buyer's Premium.** All bids submitted (other than a credit bid submitted by the Rissers) shall be subject to a buyer's premium equal to three percent (3%) of the bid amount (such amount, the "**Buyer's Premium**"). The total of the bid amount and the Buyer's Premium shall constitute the "**Total Purchase Price**" to be paid at closing for the purchase of the Real Property.

6. **Bidder Information and Proof of Funds; Qualified Bidders and Back-up Bidder.** Each bidder, other than the Rissers, shall provide all of his/her/its contact information on the Bidder Pre-Registration Form and the information and items listed in the Instructions for Bidder Qualification, including providing Proof of Funds of their anticipated bidding amount. The required information and Proof of Funds shall accompany the required Bidder Deposit stated above. The Debtor shall evaluate each bid and bidder, and may then identify a person, persons, entity, or entities from among those who submitted a Bidder Deposit and who otherwise complied with all Bidder Qualifications, and may deem such person(s) "**Qualified Bidders**." By participating in the Auction, each Qualified Bidder consents to its bid being designated as a Back-Up Bid in the event its bid is designated as the second highest offer to purchase the Real Property, and the obligations set forth in these Bid Procedures. Bidders will be evaluated solely based upon their ability to close the sale transaction without delay. The Debtor reserves the right to make the final determination of who is a Qualified Bidder. The Debtor, acting by and through the Auctioneer, shall notify all Qualified Bidders no later than 5:00 PM prevailing Orlando, Florida

3

time **one (1) business days before the Auction** that they may participate in the Auction. All Qualified Bidders shall be bound by their bids until the conclusion of the Auction.

7.  **The Auction; Time and Location**. The Auctioneer, acting on behalf of the Debtor, will conduct an online-only auction of the Real Property (the "**Auction**") via Ewald Auction's bidding platform **on March 22, 2022 at 11:00 AM Eastern Time and ending** when no other bids are received within 5 minutes from the last bid. Only Qualified Bidders (including any Stalking Horse Bidder) and the Rissers will be entitled to participate in the Auction.

8.  **Bidding**. The Auction shall be conducted as an online auction. The initial overbid at the Auction must exceed the sum of (i) any Stalking Horse Bid plus (ii) the amount of the Break Up Fee plus (iii) $250,000.00 (the "**Initial Overbid**"). After the Initial Overbid, bids by Qualified Bidders will be made in increments of $100,000.00, but such bid increment may be increased or decreased by the Auctioneer in its reasonable discretion. In the event there is no Stalking Horse Agreement, the Auction will start with an opening bid of $100,000.00 submitted by credit bid from the Rissers.

    (a) **Credit Bidding Allowed**. Except as stated herein, no person shall be permitted to credit bid at the Auction. The Rissers shall be permitted to credit bid pursuant to 11 U.S.C. § 363(k) up to $28,095,581.30. Nicholson Investments, LLC ("**Nicholson**") shall also have the right to credit bid. However, Nicholson must first pay the Rissers' claim in cash, in full, before Nicholson shall be permitted to credit bid up to the full amount of its allowed secured claim. In the event either of the Rissers or Nicholson credit bid at the Auction and are designated the Successful Bidder, then the Rissers or Nicholson (as the case may be) agree to pay Ewald Auctions at closing up to $25,000 for marketing expense, plus a $50,000 fee payable in installment payments at $10,000 a month over a period of five months. Neither the Rissers nor Nicholson are liable for any auctioneer fees or marketing expenses if they are not the Successful Bidder. Neither the Rissers nor Nicholson shall be liable for any Buyer's Premium. In the event the Rissers decide to exceed their credit bid they will automatically be deemed to be a Qualified Bidder.

9.  **Successful Bid and Back-Up Bid/Obligations to Close**.

    (a) The Auction shall conclude when Debtor receives what is determined by the Auctioneer to be the highest offer for the Real Property (the "**Successful Bid**," and the bidder submitting it, the "**Successful Bidder**"), and subject only to the subsequent approval of the Bankruptcy Court. Debtor and Auctioneer shall (i) determine which bid of any Qualified Bids constitutes the highest bid submitted at the Auction, (ii) report their determination to the Bankruptcy Court, and (iii) Debtor shall request that the Bankruptcy Court approve the designated high bidder's bid and authorize the sale of the Real Property to such Successful Bidder. Debtor shall also designate the bidder who submitted the next highest Qualified Bid (the "**Back-Up Bid**") as the "**Back-Up Bidder**."

    (b) Within 24 hours of becoming the Successful Bidder or the Back-Up Bidder, the Successful Bidder and the Back-Up Bidder shall each (i) execute a binding PSA, and (ii) supplement their respective Bidder Deposits by an additional amount such that the total deposit (the "**Deposit**") equals not less than ten percent (10%) of the Total Purchase Price pursuant to such

4

bidder's PSA (*see* paragraph 4 hereinabove). The supplemental amount shall be provided by Federal Wire Transfer to the trust account of the Escrow Agent.

       (c)       The Successful Bidder shall be required to close on the purchase of the Real Property no later than twenty-one (21) days after entry of the Sale Order (as defined below), subject to the terms and conditions of the PSA.

       (d)       If the Successful Bidder fails to consummate its purchase of the Real Property by the required closing date because of a breach or failure to perform on the part of such Successful Bidder, the Successful Bidder shall forfeit its Deposit to the Debtor, the Debtor shall notify the Back-Up Bidder of the Successful Bidder's failure to close and the Back-Up Bidder's obligation to close, and the Debtor will be authorized to consummate the sale with the Back-Up Bidder without further order of the Bankruptcy Court.

       (e)       The Back-Up Bidder shall be obligated to close within twenty-one (21) days after its receipt of notice from the Debtor that the Successful Bidder failed to close, and subject to the terms and conditions of the PSA. If the Back-Up Bidder is unable or unwilling to close the sale in the time permitted as set forth herein and under the PSA, the Back-Up Bidder shall forfeit its Deposit to the Debtor.

      10.      **The Sale Hearing**. The sale of the Real Property pursuant to these Bid Procedures shall be subject to the approval of the Bankruptcy Court at a hearing scheduled **on March 28, 2022 at 1 pm** (the "**Sale Hearing**"). At that time, the Debtor will present the results of the Auction to the Bankruptcy Court, and the Debtor will request entry of the Sale Order (as defined below), including that the Bankruptcy Court make certain findings regarding the Auction, including, among other things, that (i) the Auction was conducted in a fair and reasonable manner, (ii) the Successful Bidder was selected in accordance with the Bid Procedures, and (iii) consummation of the sale contemplated by the Successful Bid will provide the highest and best value for the Real Property and is in the best interests of the Debtor and its estate.

      11.      **The Sale Order**. The "**Sale Order**" means an order of the Bankruptcy Court, in form and substance acceptable to the Successful Bidder in its reasonable discretion, that, among other things, (a) authorizes the sale of the Real Property to the Successful Bidder free and clear of all Liens, claims, encumbrances and other interests pursuant to 11 U.S.C. §§ 363(b) and 363(f), and providing that any such Liens and claims shall attach to the sale proceeds of the Real Property; and (b) finds and provides (based upon evidence presented to the Bankruptcy Court) that (i) the Successful Bidder has acted in "good faith" within the meaning of 11 U.S.C. § 363(m), and is entitled to the protections thereunder, (ii) the sale was negotiated, proposed and entered into by the parties without collusion, in good faith and from arm's length bargaining positions, (iii) the Bankruptcy Court shall retain jurisdiction to resolve any controversy or claim arising out of or relating to the sale of the Real Property or the Successful Bidder's PSA, or any breach thereof, and (iv) the terms of the PSA and the transaction contemplated thereby may be specifically enforced against and are binding upon, and not subject to rejection or avoidance by, the Debtor. The Sale Order shall further provide that the Successful Bidder is not a successor to the business of the Debtor; that the Successful Bid represents a fair market value of the Real Property; that the Successful Bidder shall have no liability for any obligations of the Debtor, other than the purchase

price; and that the automatic stay under Rule 6004(h) of the Federal Rules of Bankruptcy Procedures shall not apply to the Sale Order.

13. **Return of Deposits**. Each Bidder Deposit and Deposit shall be maintained in a non-interest bearing account and subject to the jurisdiction of the Bankruptcy Court. Within five (5) business days after the entry of the Sale Order, the Debtor shall return all Bidder Deposits to all Qualified Bidders except (a) the Bidder Deposit submitted by the Successful Bidder, supplemented to become the Deposit, shall be applied by the Debtor against the purchase price at the closing of the sale to the Successful Bidder (or forfeited to the Debtor if the Successful Bidder defaults under its PSA and fails to close its purchase), and (b) the Deposit submitted by the Back-Up Bidder. In the event that the Successful Bidder closes the sale, the Debtor shall return to the Back-Up Bidder its full Deposit within five (5) business days after the closing. In the event the Back-Up Bidder closes on the purchase of the Real Property, its Deposit shall be applied by the Debtor against the Back-Up Bidder's purchase price at closing.

14. **Modifications to Bid Procedures**. The Debtor shall have the right to impose, at or before the Auction, additional terms and conditions on the sale of the Real Property, to extend or adjourn any deadlines set forth in these Bid Procedures, and to take any other actions with respect to the Auction, the Bid Procedures, or the sale of the Real Property which in its business judgment are reasonably necessary to preserve the bankruptcy estate or maximize the value of the Real Property, and which are not inconsistent with these Bid Procedures, the Successful Bidder's PSA, the Back-Up Bidder's PSA (if applicable), or any order of the Bankruptcy Court. In the event the Debtor takes any actions that are material in effect upon the sale, or modifies any material terms of these Bid Procedures, Debtor shall seek approval of such action(s) or modifications at the Sale Hearing.

15. **Bankruptcy Court Jurisdiction**. The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale, the Bid Procedures, the PSA, the Auction, and/or any other matter that in any way relates to the foregoing. Any party disputing the sale, the Bid Procedures, the PSA, the Auction and/or any other matter that in any way relates to the foregoing shall file an objection with the Bankruptcy Court as soon as practicable to facilitate resolution of the objection. Any party disputing the sale, the Bid Procedures, the Purchase and Sale Agreement, the Auction and/or any other matter that in any way relates to the foregoing shall file an objection with the Court as soon as practicable to facilitate resolution of the objection.

16. **Miscellaneous.** All Qualified Bidders shall be deemed to have waived any right to a jury trial in connection with any disputes relating to the Auction and/or the sale of the Real Property. All purchase and sale agreements shall be governed by and construed in accordance with the laws of the State of Florida.

17. **Data Room**. The Auctioneer will maintain an electronic data room with all due diligence materials pertinent to the sale of the Real Property, and the form of the PSA. Bidders may contact Robert "Bob" Ewald (bob@ewaldauctions.com) to request access to the data room. In the event that any additional due diligence material is requested and provided in written form that has not previously been provided in the data room, the Auctioneer shall make such information or documents available in the data room. Neither the Debtor nor any of its professional, including

the Auctioneer, make any representations or warranties regarding any of the due diligence materials or the accuracy of any information contained therein. All bidders are responsible for conducting their own due diligence with regard to the Real Property. The Debtor and its professionals, including the Auctioneer, shall be held harmless and are not subject to any liability with respect to any due diligence materials.

18. **Escrow Agent and Deposits**. Any and all deposits required to be provided pursuant to these Bid Procedures shall be sent via wire transfer to the Escrow Agent. "**Escrow Agent**" shall mean Lawrence M. Kosto, Esq., and the law firm of Kosto & Rotella, P.A. The deposits shall be held in escrow, in a non-interest bearing account. There shall be no interest earned on the money deposited with the Escrow Holder. All bidders agree to hold the Escrow Agent harmless for any action taken in accordance with these Bid Procedures and/or any Bankruptcy Court Order relating to the sale. The Escrow Agent is specifically authorized to transfer the Deposits of the Successful Bidder or the Back-Up Bidder (as the case may be) to the closing agent at closing of a sale to the Successful Bidder or the Back-Up Bidder, respectively, which sum shall be applied toward the Total Contract Price at closing. Should the Successful Bidder or Back-Up Bidder fail to close, the Escrow Agent is specifically authorized to pay any monies to the Debtor.

19. **Reservation of Rights.** Except as otherwise provided herein, the Debtor has discretion, in its reasonable business judgment, to (i) determine which bids are Qualified Bids; (ii) determine which Qualified Bid is the highest bid, and which is the next highest bid, and to designate the Successful Bidder and Back-Up Bidder accordingly; (iii) reject any bid that is (a) inadequate or insufficient or (b) not in conformity with the requirements of these Bid Procedures or the requirements of the Bankruptcy Code.

# Rochelle Holdings XIII, LLC
## Proposed Advertising Plan January-February 2022

| Time Frame | Dates | Description | Extension |
|---|---|---|---|
| Jan-Feb | TBD | Wall Street Journal Ads - Print and On-line. | $ 7,500.00 |
| Jan-Feb | TBD | Miami Herald - Print and On-line. | $ 3,500.00 |
| Jan-Feb | TBD | Orlando Sentinel - Print and On-line. | $ 3,500.00 |
| Jan-Feb | TBD | Orlando Business Journal - Print and On-line. | $ 3,500.00 |
| Jan-Feb | Jan | Full Color Flyer for email circulation and website | $ 2,000.00 |
| Jan-Feb | Jan | Signage on site | $ 1,500.00 |
| Jan-Feb | Jan/Feb & Ongoing | Internet Advertising: Posted on various websites including LoopNet, Auction Zip, Proxibid, Ewald Auctions, others as appropriate and local Email blasts. | $ 3,500.00 |
| Jan-Feb | Jan/Feb & Ongoing | Public Relations Campaign: Press Release, drafted and out to major outlets, early in January | $ - |
| | | **TOTAL PROPOSED ADVERTISING** | **$ 25,000.00** |

*We only charge the actual amounts incurred to the estate. Copies of all expenses will be included with the Actual Advertising Summary provided to the Seller with copies of all ads run. In some larger marketing campaigns, we often work with advertising agencies that specialize in real estate and auction marketing campaigns.*



EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:

ROCHELLE HOLDINGS XIII, LLC,

Debtor.

CASE NO. 6:21-bk-03216-LVV

## NOTICE OF AUCTION AND SALE HEARING
## PLEASE TAKE NOTICE OF THE FOLLOWING:

On December 9, 2021, ROCHELLE, filed a Motion for Bid and Sale Procedures, Marketing Procedures and for Related Relief (the "Bid Procedures Motion") seeking (i) an Order (the "Bid Procedures Order") (a) approving bidding procedures and bidder protections for the sale of the Real Property (defined in the Motion for Bid and Sale Procedures, Marketing Procedures and for Related Relief; (b) approving marketing procedures; and (c) scheduling a final sale hearing; and (d) an Order authorizing the sale of the Real Property, free and clear of liens, claims, interests and encumbrances in connection therewith. On January 3, 2022, the Debtor filed an Amended Motion for Bid and Sale Procedures, Marketing Procedures and for Related Relief (Doc. #113).

The matter came on for hearing on January 4, 2022, and on January __, 2022, the United States Bankruptcy Court for the Middle District of Florida entered the Bid Procedures Order (Doc. # ____). Pursuant to the Bid Procedures Order, The Auctioneer, acting on behalf of the Debtor, will conduct an online-only auction of the vacant property (the "**Auction**"). The Auction will take place online via the Ewald Auctions, Inc. designated Bidding Platform and shall **commence on March 22, 2022 at 1:00 p.m. Eastern Time and end at when NO higher bids are received after five minutes from when the previous high bid is placed.** Only Qualified Bidders (including any Stalking Horse Bidder) will be entitled to participate in the Online Auction

EXHIBIT C

61586727;2

Any party that wishes to take part in this process and submit a bid for the Property must do so in accordance with the Bid Procedures. To be considered a Qualified Bid, each potential bidder must submit a Qualified Bid Packet as more particularly described in the Bid Procedures. The Qualified Bid Packet must include the following:

i. provide for the purchase of the entirety of the Real Property and such purchase may not have any conditions to close;

ii. not be conditioned on due diligence or financing;

iii. except for the Stalking Horse Bidder, not request or entitle the subsequent bidder to any break-up fee or expense reimbursement;

iv. disclose the identity of each person and/or entity (and for each entity, disclose each principal) bidding for the Real Property or participating in connection with a bid, and the terms of any such participation;

v. contain written evidence that the bidder has the requisite corporate or similar authority to consummate the proposed Sale;

vi. offer a cash amount set by the Bid and Sale Procedures; and

vii. be accompanied by an acknowledgement that the Potential Bidder has had an opportunity to conduct due diligence, does not require further due diligence and has relied solely upon its own independent review in making its bid.

The Opening Overbid must exceed any Stalking Horse Bid by the aggregate of the Stalking Horse Bid Amount, the Stalking Horse Break-Up Fee, plus $250,000. After the Initial Opening Overbid, bids by Qualified Bidders may be increased in increments of $100,000.

A hearing to consider approval of the sale of the Real Property to the Successful Bidder free and clear of all liens, claim and encumbrances will be held before.... (the "Sale Hearing") before the Honorable Lori Vaughan, United States Bankruptcy Court, 400 W. Washington Street, 6th Floor, Orlando, FL 32801 on March 28, 2022 at 1:00 **p.m.** (prevailing Eastern Time). The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest

other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing.

Objections, if any, to the sale of the Real Property contemplated by the Agreement, or the relief requested in the Bid Procedures Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the Clerk of the Bankruptcy Court for the Middle District of Florida (or filed electronically via CM/ECF), at least 7 days before the Sale Hearing, and (d) be served so as to be received no later than the same day, upon: (i) the Auctioneer; (ii) the Debtor, (iii) Debtor's Counsel, (iv) counsel for the Rissers, (v) counsel for Nicholson, and (vi) the Office of the United States Trustee.

This Sale Notice and the Sale Hearing are subject to the fuller terms and conditions of the Bid Procedures Motion and the Bid Procedures Order. The Bid Procedures Order, which contain amended Bid Procedures shall control, in the event of any conflict, and the Auctioneer encourages parties in interest to review such documents in their entirety. Copies of the Bid Procedures Motion, the Agreement, the Bid Procedures, and/or the Bid Procedures Order may be obtained by written request to Robert Ewald with Ewald Auctions, 12472 Lake Underhill Rd., Suite 312, Orlando, FL 32828, bob@ewaldauctions.com (407) 275-6853. In addition, copies of the aforementioned pleadings may be found on the internet at http://ecf.flmb.uscourts.gov, and are on file with the Bankruptcy Court for the Middle District of Florida.

                                                */s/ Lawrence M. Kosto*
Lawrence M. Kosto, Esquire
FL Bar No. 0765325
Kosto & Rotella, P.A.
619 E. Washington Street
Orlando, FL 32801
Telephone: 407-425-3456
Facsimile: 407-423-9002
lkosto@kostoandrotella.com
Attorneys for Debtor

3

61586727;2