ORDERED.

**Dated: March 03, 2022**

Lori V. Vaughan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:21-bk-03216-LVV

In re:

ROCHELLE HOLDINGS XIII, LLC,

Debtor.
_____________________________________/

**ORDER GRANTING DEBTOR'S MOTION FOR ORDER CANCELING AUCTION AND APPROVING SALE OF REAL PROPERTY TO KELLY PARK VB DEVELOPMENT, LLC**

THIS CASE having come before the Court on the Debtor, Rochelle Holdings XIII, LLC's (the "Debtor") Motion or Order Canceling Auction and Approving Sale of Real Property to Kelly Park VB Development, LLC (Doc. No. 149) (the "Sale Motion") through which Debtor is seeking the cancelation of the Auction[1] and the entry of an order approving the sale (the "Sale") of the Property identified in the Purchase Agreement (as defined hereafter) to Kelly Park VB Development, LLC (the "Purchaser") as described in the Sale Motion and the Purchase and Sale

[1] Unless otherwise defined, capitals terms used herein shall have the meaning ascribed to them in the Sale Motion.

Agreement attached to the Motion as Exhibit "B" (the "Purchase Agreement") pursuant to sections 105(a) and 363 of United States Code ("Bankruptcy Code"), Rules 2002(a)(2) and 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida ("Local Rules"); and the Court having reviewed the Sale Motion and the Purchase Agreement; and it appearing that due and adequate notice of the Sale Motion having been given to all parties entitled thereto, and that no other or further notice need be given; and the Court having held a hearing on February 23, 2022 ("Sale Hearing") to consider the relief requested in the Sale Motion and all objections thereto; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor's Estate, its creditors, and other parties in interest; and after due deliberation, and good sufficient cause appearing therefor, it is

**FOUND THAT:**

A. This Court has jurisdiction over the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of this case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. The Property is property of the estate. The description of the Property which is the subject of this Order, and its legal description is contained in Exhibit A attached.

C. The statutory predicates for the relief sought in the Sale Motion are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

D. Proper, timely, adequate and sufficient notice of the Sale Motion and the relief requested therein, the Sale Hearing, the Sale, and the transactions described in the Purchase Agreement, including, without limitation, the amount of the deposit and the requirement for the

cancelation of the Auction contained in the Purchase Agreement (all such transactions being collectively referred to as the ("Sale Transaction"), has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014 to all interested persons and entities, including: (i) Purchaser and counsel for the Purchaser, (ii) the United States Trustee, (iii) the Debtor's secured creditors and lien holders, including all creditors or their counsel known to the Debtor to assert a lien (including any security interest), claim, right, interest, or encumbrance of record against all or any portion of the Property, (iv) all parties who have filed a claim in this Case; and (v) all other parties that filed notices of appearance in the Chapter 11 cases ((i)-(v) shall be collectively referred to herein as the "Notice Parties"). Under the circumstances of this case and based on Court's findings at the Sale Hearing, the notice described above was good, sufficient, and appropriate under the circumstances, and no other notice is required.

E. The disclosures made by the Debtor concerning the Purchase Agreement, the Sale contemplated by the Purchase Agreement, and the Sale Hearing were good, complete, and adequate.

F. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities with standing to participate in this Case.

G. The Debtor has full corporate power and authority to consummate the Sale Transaction pursuant to the Purchase Agreement and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtor to consummate the Sale Transaction.

H. Approval of the Purchase Agreement and consummation of the Sale Transaction are in the best interests of the Debtor's estate, its creditors, equity holders, equity claimants and other parties-in-interest.

I. The Debtor has demonstrated good, sufficient, and sound business purpose and justification and compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code. Such business reasons include, without limitation, the following: (i) the Purchase Agreement constitutes the best offer for the Property and provides for the global resolution of all claims and disputes in this case in accordance with the Settlement and Release Agreement attached to the Sale Motion as Exhibit A; (ii) the Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Property; and (iii) any other transaction, including, without limitation, pursuant to a Chapter 11 plan, would not have yielded as favorable of a result.

J. The Purchase Agreement was negotiated, proposed, and entered into by and among the Debtor and the Purchaser, without collusion, in good faith, and from arm's length bargaining positions. The Purchaser is not an "insider" or "affiliate" of the Debtor as those terms are defined in the Bankruptcy Code. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the avoidance of the Purchase Agreement or the consummation of the Sale Transaction, or the imposition of costs or damages under section 363(n) of the Bankruptcy Code.

K. The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby in that: (a) the Purchaser recognized that the Debtor was free to deal with any other party interested in a transaction regarding the Sale; (b) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the transactions have been

disclosed; (f) the Purchaser neither induced nor caused the Debtor's Chapter 11 filing; (g) the negotiation and execution of the Purchase Agreement and any other agreements or instruments related thereto was in good faith and an arm's length transaction between the Purchaser and the Debtor; and (h) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction. The Purchaser has at all times acted in good faith and will continue to be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Purchase Agreement.

L. The terms and conditions of the Purchase Agreement are fair and reasonable. The consideration being provided by the Purchaser for the Property pursuant to the Purchase Agreement (a) is fair and reasonable, (b) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative, and (c) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law. No other entity or group of entities has offered to purchase the Property for greater economic value to the Debtor's Estate or the creditors other than the Purchaser. The Debtor's determination that the Purchase Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtor's business judgment.

M. The Purchaser is not a mere continuation of any of the Debtor or its estate and there is no continuity of enterprise between the Purchaser and any of the Debtor. The Purchaser is not holding itself out to the public as a continuation of any of the Debtor. The Purchaser is not a successor to any of the Debtor or its Estate and the Sale does not amount to a consolidation, merger, or de facto merger of Purchaser and the Debtor.

N. The Purchaser has not agreed to assume and shall have no obligations with respect to any liabilities of the Debtor or Affiliates.

O. The Purchaser is not and will not be liable to any agent, broker, person, or firm acting or purporting to act on behalf of either the Debtor or the Purchaser for any commission, broker's fee, or finder's fee respecting the Sale Transaction.

P. The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtor nor the Purchaser are fraudulently entering in the transaction contemplated by the Purchase Agreement.

Q. The Debtor is the sole and lawful owner of the Property, and holds good title thereto. The transfer of the Property to the Purchaser will be a legal, valid, and effective transfer of the Property, and will vest the Purchaser with all right, title, and interest of the Debtor in and to the Assets free and clear of all liens, claims, interests, obligations, rights, charges, and encumbrances. The Purchaser shall have no liability for any claims against or liabilities of the Debtor or its estate.

R. The Debtor has good marketable title to the Property and is the lawful owner of the Property. The Debtor may sell the Assets free and clear, except as set forth in this order, all, liens, interests, obligations, rights, encumbrances, pledges, mortgages, deeds of trust, security interests, claims (including, any "claim" as defined in Section 101(5) of the Bankruptcy Code), leases, possessory leasehold interests, charges, options, rights of first refusal or option to purchase any real property, easements, servitudes, transfer restrictions under any agreement, judgments, hypothecations, demands, licenses, sublicenses, assignments, debts, obligations, guaranties, options, contractual commitments, restrictions, environmental liabilities, options to purchase, and

options, in each case of whatever kind, nature, or description in, against, or with respect to any of the Property, having arisen, existed or accrued prior to and through the Closing, whether direct or indirect, absolute or contingent, choate or inchoate, fixed or contingent, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute, or otherwise and whether arising prior to, on, or after the Petition Date, including those liens, claims, and/or encumbrances (collectively, "Liens, Claims, and/or Interests"), because one or more of the standards set forth in section 363(f)(1) – (5) has been satisfied with regard to each such Lien, Claim, and/or Interest.

S. If the Sale were not free and clear of all Liens, Claims, and/or Interests, or if the Purchaser would, or in the future could, be liable for any of the Liens, Claims, and/or Interests, the Purchaser would not have entered into the Purchase Agreement and would not consummate the Sale.

T. The transfer of the Property to the Purchaser (a) does not constitute an avoidable transfer under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law and (b) does not and will not subject the Purchaser to any liability whatsoever with respect to the operation of the Debtor's business prior to the closing of the Sale Transaction (the "Closing").

**NOW THEREFORE, IT IS ORDERED THAT:**

1. The Sale Motion is hereby granted and approved as set forth herein.

2. Upon the Purchaser paying the Debtor the Additional Deposit as required by section 5 of the Purchase Agreement, the Auction shall be immediately canceled. Purchaser shall pay the Additional Deposit within three (3) business days of the entry of this Order. The Court finds that the cancelation of the Auction and approval of the direct sale of the Property to the Purchaser is in the best of the Debtor's estate, creditors and parties in interest.

3. Once made, the Deposit made pursuant to the Purchase Agreement is hereby found to be fully non-refundable to the Purchaser unless the Court finds that the Closing failed to occur solely because of a default by the Debtor under the provisions of the Purchase Agreement, the Sale Order, or any other order of the Bankruptcy Court applicable to the sale of the Property hereunder, then Purchaser may, as its exclusive remedy (i) receive a return of its Deposit and terminate this Agreement by notice to Debtor; or (ii) Purchaser may seek specific performance of this Agreement. To the extent any provision of the Purchase Agreement is inconsistent with this finding, the Sale Order shall control and supersedes any contrary provision in the Purchase Agreement.

4. The findings of fact set forth above and conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

5. As announced on the record and agreed to by the Purchaser at the Sale Hearing, the obligation for the Debtor to provide, and the creditors and other parties to execute, the Purchaser Releases identified in section 4 of the Purchase Agreement is hereby stricken and no longer a requirement of the Purchase Agreement. However, based on the agreement between the parties and effective upon receipt of the payments the parties are entitled to under the terms of the Order Confirming the Fourth Amended Plan, Purchaser, J & R Hewitt Investments Limited Partnership, and Nicholson Investments, LLC are shall be deemed to have fully released each other from any and claims (as defined in section 101(5) of the Bankruptcy Code) they ever had or may now have against each other related to the Property or this Bankruptcy Case.

6. As announced on the record and agreed to by the Debtor at the Sale Hearing, Exhibit A to the Purchase and Sale Agreement does not govern the amounts due and owing to the secured creditors. The secured creditors' claims which continue to accrue interest and fees shall be paid in full at the Closing. The Closing shall occur on or before April 15, 2022, and the Purchase Agreement and any related agreements, documents, or other instruments shall not be modified, amended, or supplemented in any manner that extends the Closing beyond April 15, 2022. If the Closing does not occur on or before April 15, 2022, the Debtor shall be in default under the terms of the Fourth Amended Plan and the Rissers shall be entitled take title to the Property in accordance with the terms of the Plan.

7. The Rissers' objection to the Sale Motion and Purchase Agreement is hereby overruled on the merits. Those parties who did not object to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

8. The Sale Transaction, and all of the terms and conditions and transactions contemplated by the Purchase Agreement, including, without limitation, the obligations contained therein, are hereby authorized and approved pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

9. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor shall consummate the Sale Transaction, as the case may be, pursuant to and in accordance with the terms and conditions of the Purchase Agreement, as modified by this Sale Order, and the Debtor shall at all times act in accordance with the terms thereof.

10. The Debtor shall execute and deliver, and perform under, consummate, and implement the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary, convenient, or desirable to implement the Purchase Agreement and

consummate the Sale Transaction pursuant thereto and effectuate the provisions of this Order and the transactions approved hereby, and shall take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser the Property.

11. This Order shall be binding in all respects upon (a) the Debtor, (b) its estate, (c) all creditors, (d) all holders of Liens, Claims, and/or Interests whether known or unknown against or on all or any portion of the Assets, (e) the Purchaser and all successors and assigns of the Purchaser, (e) the Property, (f) any trustees subsequently appointed in the Debtor's Chapter 11 case or upon a dismissal or conversion of this case under Chapter 7 of the Bankruptcy Code. This Order and the Purchase Agreement shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser, and the respective successors and assigns of each of the foregoing.

12. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor may sell the Property free and clear of any Liens, Claims, and/or Interests in the Property.

13. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Property (and good and marketable title to such Property) and all of the Debtor's rights, title, and interest therein shall be transferred to the Purchaser free and clear of all Liens, Claims, and/or Interests with all such Liens, Claims, and/or Interests to be paid at Closing in accordance with the terms of the Order Confirming the Debtor's Fourth Amended Plan and the Settlement and Release Agreement.

14. Following the Closing and payment of the Purchase Price in accordance with section 5 of the Purchase Agreement, all persons and entities (and their respective successors and assigns) including, but not limited to, all equity security holders, governmental, tax, and regulatory

authorities, lenders, trade, and other creditors, holding Liens, Claims, and/or Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) against, in, or with respect to the Debtor and/or the Property arising or accruing under or out of, in connection with, or in any way relating to, the Debtor, the Property, the operation of the Debtor’s business prior to the Closing, or the transfer of the Property to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Liens, Claims, and/or Interests against the Property or the Purchaser or any of the Purchaser's successors or assigns. Following the Closing Date, no holder of a Lien, Claim, and/or Interest shall interfere with the Purchaser's title to or use and enjoyment of the Property based on or related to such Lien, Claim, and/or Interest or any actions that the Debtor has taken or may take in this Chapter 11 case. Effective upon the Closing, the Purchaser shall have no liability for any claims (as defined in section 101(5) of the Bankruptcy Code) against the Debtor or its estate.

15. Nothing in this Sale Order shall in any way impact or limit the Rissers’ or any other parties’ rights under the Kelly Park Crossing Development of Regional Impact or any other development rights that party may have as it relates to any real property that is separately owned by the Rissers or any other party.

16. The Debtor may sell the Property free and clear of all Liens, Claims, and/or Interests whatsoever against the Debtor, its estate, or any of the Property because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied and all creditors and parties and interest shall be paid in full at Closing in accordance with the terms of the Confirmation Order Approving the Fourth Amended Plan and the Settlement and Release Agreement.

17. Nothing in this Order or in the Purchase and Sale Agreement shall in any way impact the validity of the following easement across the Property held by Richard J. Risser, Trustee of the Richard J. Risser Family Trust dated September 13, 2007, and Shirley R. Risser, Trustee of the Shirley R. Risser Family Trust dated September 13, 2007 (collectively, the "Rissers"): (i) Ingress and Egress Easement in favor of Richard J. Risser and Shirley R. Risser, his wife recorded April 2, 2007 in Book 9192, Page 3519; and (ii) Utilities Easement in favor of Richard J. Risser and Shirley R. Risser, his wife recorded April 2, 2007 in Book 9192, Page 3524.

18. The transfer of the Property to the Purchaser pursuant to the Purchase Agreement constitutes a legal, valid, and effective transfer of the Property, and shall vest the Purchaser with all right, title, and interest of the Debtor in and to the Property.

19. The proceeds of the Sale Transaction (including the amount of the Deposit) shall be distributed at the Closing as follows: first to pay the costs and expenses incurred by the Debtor in connection with the Sale Transaction (excluding legal fees), including, without limitation, the commission owing to the Auctioneer, Bob Ewald with Ewald Auctions, in the amount of $465,000.00 and second, to the secured creditors and other parties in this Case in accordance with and pursuant to the terms of the Order Confirming the Debtor's Fourth Amended Plan.

20. The transfer of the Property to Purchaser shall not result in (a) the Purchaser or the Property having any liability or responsibility for any Liens, Claims, and/or Interests against the Debtor or against an insider of the Debtor, (b) the Purchaser or the Property having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any Liens, Claims, and/or Interests, or (c) the Purchaser or the Property, having any liability or responsibility to the Debtor except as is expressly set forth in the Purchase Agreement.

21. All persons and entities are hereby prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of any of the Debtor to sell and transfer the Property to the Purchaser in accordance with the terms of the Purchase Agreement and this Order.

22. This Sale Order shall operate as a permanent injunction prohibiting any party to a contract that has been rejected by the Debtor that in any way relates to the Property from taking any action against the Purchaser in connection with the Sale Transaction, whether pursuant to the Bankruptcy Code or any other statutory or non-statutory federal, state, or local law.

23. The transfer of the Property to the Purchaser under this Sale Order is made in conjunction with, and pursuant to the terms of the confirmation of the Debtor's Fourth Amended Plan of Reorganization, as modified, and, therefore, such transfer is exempt from any transfer or stamp tax under section 1146(a) of the Bankruptcy Code, whether imposed against the Debtor or the Purchaser.

24. Each and every federal, state, and local governmental agency or department or office is hereby directed to accept this Sale Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

25. From and after the date hereof, no creditor of the Debtor or other party in interest shall take or cause to be taken any action that would interfere with the transfer of the Property to the Purchaser in accordance with the terms of this Sale Order.

26. This Court hereby retains exclusive jurisdiction, to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects including, but not limited to, retaining jurisdiction to (a) compel delivery of the Property to the

Purchaser in accordance with the terms of the Purchase Agreement, (b) resolve any dispute, controversy, or claim arising under or related to the Purchase Agreement, or the breach thereof and (c) interpret, implement, and enforce the provisions of this Sale Order and resolve any disputes related thereto.

27. The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code. The Purchaser is a good faith purchaser of the Property and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code. Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction to the Purchaser.

28. The failure specifically to include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety.

29. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30. The sale hearing scheduled for March 28, 2022 at 1:00 p.m., for purposes of approving the sale of the Property to the winning bidder from the Auction is hereby canceled.

Attorney Lawrence M. Kosto is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and to file proof of service within three days of entry of this Order.

**EXHIBIT A**

**LEGAL DESCRIPTION**

A PORTION OF THE WEST 1/2 OF SECTION 13, TOWNSHIP 20 SOUTH, RANGE 27 EAST, ORANGE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTH 1/4 CORNER OF SECTION 13, TOWNSHIP 20 SOUTH, RANGE 27 EAST, ORANGE COUNTY, FLORIDA; THENCE RUN NORTH 89°49'52" WEST, ALONG THE SOUTH LINE OF THE SOUTHWEST 1/4 OF SAID SECTION 13, FOR A DISTANCE OF 1356.86 FEET; THENCE DEPARTING SAID SOUTH LINE, RUN NORTH 00°08'4 1" EAST, FOR A DISTANCE OF 2147.97 FEET; THENCE RUN NORTH 89°58'09" WEST, ALONG THE NORTH LINE OF THE SOUTH 800 FEET OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SAID SECTION 13, FOR A DISTANCE OF 1321.42 FEET TO A POINT ON THE EASTERLY RIGHT OF WAY LINE OF GOLDEN GEM ROAD, AS REC0RDED IN OFFICIAL RECORDS BOOK 6 I. PAGE 315 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; THENCE DEPARTING SAID NORTH LINE, RUN NORTH 00° 1 7'25" EAST, ALONG SAID EASTERLY RIGHT OF WAY LINE, FOR A DISTANCE OF 544.78 FEET; THENCE RUN NORTH 01 °08'04" EAST, ALONG SAID EASTERLY RIGHT OF WAY LINE, FOR A DISTANCE OF 2603.70 FEET; THENCE DEPARTING SAID EASTERLY RIGHT OF WAY LINE, RUN SOUTH 89°27'40" EAST, ALONG THE NORTH LINE OF THE NORTHWEST 1/4 OF SAID SECTION 13, FOR A DISTANCE OF 1324.32 FEET; THENCE DEPARTING SAID NORTH LINE, RUN SOUTH 00°34'14" WEST, ALONG THE WEST LINE OF THE NORTHEAST 1/4 OF THE NORTHWEST 1/4 OF SAID SECTION 13, FOR A DISTANCE OF 853.16 FEET; THENCE DEPARTING SAID WEST LINE, RUN SOUTH 89°47'15" EAST, FOR A DISTANCE OF 160.19 FEET; THENCE RUN SOUTH 00°12'45" WEST, FOR A DISTANCE OF 30.00 FEET; THENCE RUN SOUTH 89°47'15" EAST, ALONG A LINE PARALLEL WITH THE SOUTH LINE OF THE NORTHEAST 1/4 OF THE NORTHWEST 1/4 OF SAID SECTION 13, FOR A DISTANCE OF 476.16 FEET; THENCE RUN SOUTH 00°17'10" WEST, FOR A DISTANCE OF 395.99 FEET; THENCE RUN SOUTH 89°47'15" EAST, ALONG THE SOUTH LINE OF THE NORTHEAST 1/4 OF THE NORTHWEST 1/4 OF SAID SECTION 13, FOR A DISTANCE OF 668.5 l FEET TO A POINT ON THE EAST LINE OF THE WEST 1/2 OF SAID SECTION 13; THENCE DEPARTING SAID SOUTH LINE, RUN SOUTH 00°00'00" EAST, ALONG SAID EAST LINE, FOR A DISTANCE OF 1042.54 FEET; THENCE DEPARTING SAID EAST LINE, RUN NORTH 90°00'00" WEST, FOR A DISTANCE OF 500.00 FEET; THENCE RUN SOUTH 00°00'00" EAST, FOR A DISTANCE OF 1776.1 l FEET; THENCE RUN SOUTH 90°00'00" EAST, FOR A DISTANCE OF 500.00 FEET TO A POINT ON THE AFORESAID EAST LINE OF THE WEST 1/2 OF SECTION 13; THENCE RUN SOUTH 00°00'00" EAST, FOR A DISTANCE OF 1185.59 FEET TO THE POINT OF BEGINNING.

LESS AND EXCEPT THAT PORTION DESCRIBED IN WARRANTY DEED RECORDED IN O.R. BOOK 10369. PAGE 190. PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA. BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THE NORTHEAST 1/4 OF THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF NORTHWEST 1/4 OF SECTION 13. TOWNSHIP 20 SOUTH. RANGE 27 EAST OF ORANGE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCE AT THE NORTHEAST CORNER OF THE NORTHWEST 1/4 OF SECTION 13-20-27; THENCE RUN S 00°00'00" W ALONG THE EAST LINE OF THE NORTHWEST 1/4 OF SECTION 13 FOR A DISTANCE OF 1301.77 FEET TO A POINT ON THE NORTHEAST CORNER OF THE NORTHEAST 1/4 OF THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF THE NORTHWEST 1/4 OF SAID SECTION 13. SAID POINT ALSO BEING THE POINT OF BEGINNING; THENCE RUN S 00°00'00" W FOR A DISTANCE OF 325.44 FEET TO A POINT ON THE SOUTH LINE OF THE NORTHEAST 1/4 OF THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF THE NORTHWEST 1/4 OF SAID SECTION 13; THENCE RUN N 89°52'05" W ALONG SAID SOUTH LINE FOR A DISTANCE OF 335.07 FEET TO A POINT ON THE WEST LINE OF THE NORTHEAST 1/4 OF THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF THE NORTHWEST 1/4 OF SAID SECTION 13; THENCE RUN N 00°08'36" E ALONG SAID WEST LINE FOR A DISTANCE OF 325.91 FEET TO A POINT ON THE NORTH LINE OF THE SOUTHEAST 1/4 OF THE NORTHWEST 1/4 OF SAID SECTION 13; THENCE RUN S 89°47'15" E ALONG SAID NORTH LINE FOR A DISTANCE OF 334.25 FEET TO THE AFORESAID POINT OF BEGINNING.